Claude E. Spriggs v. Commissioner.
Spriggs v. Commissioner
Docket No. 41620.
United States Tax Court
T.C. Memo 1959-191; 1959 Tax Ct. Memo LEXIS 58; 18 T.C.M. (CCH) 861; T.C.M. (RIA) 59191; October 14, 1959
*58 William T. Choisser, Esq., 505 Luhrs Tower, Phoenix, Ariz., for the petitioner. Earl C. Crouter, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income tax and additions to tax for fraud, as follows: Additions
to Tax,
I.R.C. 1939
Year
Deficiency
Sec. 293(b)
1942
$ 164.59
$ 82.29
1943
1,561.31
780.65
1944
1,281.53
640.76
1945
615.07
307.53
1946
937.83
468.91
1947
1,773.12
886.56
In controversy are whether the years in question are barred by the statute of limitations, whether a part of the deficiency for each year is due to fraud, and whether the petitioner is liable for the deficiencies determined by the respondent. Findings of Fact Some of the facts have been stipulated, and, as stipulated, they are incorporated by reference. Petitioner is a resident of Phoenix, Arizona. He filed income tax returns for the years 1942 through 1947 with the then collector of internal revenue at Phoenix. On these returns the total income, net income, and income tax liability reported was as follows: Total In-
Net In-
Income Tax
Year
come
come
Liability
1942
$1,652.06
$1,340.53
None
1943
1,651.18
1,593.45
$9.68
1944
1,059.09
(147.25)
None
1945
332.19
(282.85)
None
1946
1,548.67
None
None
1947
2,601.32
1,928.17
None
*59 These returns were filed and signed by the petitioner only. His wife, Evelyn Lee Spriggs, did not file any Federal income tax return for any of the years 1942 through 1947. Petitioner intended his returns to cover the community income of himself and his wife, and in each return he recorded the full amount of the personal exemption for himself and wife, and also appropriate credits or exemptions for their two children. Petitioner filed his 1942 return on January 29, 1943; his 1943 return on March 15, 1944; his 1944 return on January 22, 1945; his 1945 return on January 15, 1946; his 1946 return on January 10, 1947; and his 1947 return on January 7, 1948. The notice of deficiencies for the years 1942 through 1947 was mailed by the respondent on March 11, 1952. For the taxable years in issue the respondent determined amounts of income as follows: 1942
Gross income after adjustments
$3,167.96
Less deductions claimed on return
311.53
Net income
$2,856.43
1943
Adjusted gross income
$8,548.02
Less deductions per return
57.73
Income tax net income
$8,490.29
Victory tax net income
4,110.69
1944
Adjusted gross income
$7,599.11
Less deductions
593.83
Net income
$7,005.28
1945
Net income
$4,500.28
1946
Net income
$6,566.11
1947
Net income
$9,688.14
*60 Petitioner was an attorney at law. He commenced the practice of his profession at Safford, Arizona, in 1938. In October 1943 he moved to Phoenix, Arizona, and became associated with the law firm of Struckmeyer and Struckmeyer. From October 1943 to January 1, 1946, he handled some cases and legal matters for this firm and also had some legal practice and business of his own. On matters which he handled on behalf of the firm he usually received about one-third of the legal fees received by the firm. Fees received by him on his own cases were entirely retained by him. On January 1, 1946, he left Struckmeyer and Struckmeyer and engaged in the practice of law in his own office in Phoenix during the years 1946 and 1947. During the years 1942 through 1947 he prepared hundreds of income tax returns for taxpayers. He also engaged in the purchase, sale, and rental, of real estate, and in other business activities. During the year 1942 petitioner received rent from five rental properties in the amount of $1,112.50. In his income tax return for that year, he reported rent received in the amount of $655.08, and did not report rent received in the amount of $457.42. The petitioner received *61 legal fees from the following sources which he did not report in his income tax returns: 1943
Struckmeyer and Struckmeyer
$558.87
1945
Ruth Van Dyke
$232.19
Petitioner received and did not report the following amounts of interest received by him: Clyde Daringer
1942
$ 12.40
1943
29.25
Otis Sasser
1943
500.00
Helen Pittman
1943
17.75
1944
88.75
1945
49.61
1946
4.83
1947
2.04
Jessie Gomez
1943
58.33
1944
562.00
1945
46.00
Wilburn Brown
1944
118.33
1945
16.67
Petitioner received and did not report the following real estate profits during the taxable years: 1942
11th St.
Relation St.
House
House
Sales price
$1,750.00
$2,000.00
Cost
1,520.35
1,542.24
Depreciation
222.90 *
179.46 *
Gross profit
$ 452.55
$ 637.22
Commission paid
100.00 *
Abstract of title
40.00 *
40.00 *
Net
$ 412.56
$ 497.22
Taxable
$ 206.28
$ 248.61
1943
Sale of Farm and Livestock to Gomez
Sales price
$24,250.00
Cost
$18,482.98
Taxable gain
$ 5,767.02 This farm was originally acquired by deed from *62 Eldon I. Palmer and Lucille Palmer, husband and wife, to Evelyn Lee Spriggs, which was recorded on May 18, 1943. The sale by petitioner and his wife to Jessie Gomez and Vidal Gomez, her husband, on September 11, 1943, was handled entirely by petitioner. Jessie Gomez did not know Evelyn Lee Spriggs at that time. Livestock sold with the farm was paid for by check in the amount of $1,761.79 drawn by petitioner on the joint bank account of petitioner and his wife in which he deposited his legal fees. The check for the down payment of $6,000 signed by Vidal Gomez was payable to petitioner and deposited by him; other checks were handled through an escrow account. Petitioner, in sworn financial net worth statements, which were prepared by Government agents from his books and records, public records, and petitioner's oral statements, to reflect his net worth, listed, among other items, an item of note receivable from Jessie Gomez in the amount of $7,821.40 on December 31, 1943, and December 31, 1944. In a signed receipt, dated September 11, 1943, petitioner and his wife acknowledged receipt of the $6,000 paid "upon the purchase of our farm located across the river from Safford, Arizona * * *63 *." (Italics supplied.) 1944
Safford
Struck-
Hi-De-Ho
House
meyer
Partner-
1029
Con-
ship
5th Ave.
tract
Sales price
$8,400.00
$3,489.71
$1,500.00
Cost
5,000.00
2,063.30
1,000.00
Inventory
491.22
Depreciation
430.16
Abstract fee
40.00
Gain
$2,407.92 *
$1,816.57
$ 500.00
Taxable
$2,407.92 *
$ 908.28
$ 500.00
1945
Sold 1312 East Taylor St. for
$4,000.00
Cost (1-22-45)
$3,330.24
Selling expense
270.00 *
3,600.24
Short-term gain
$ 399.76
Stipulated net gain
$ 346.15
1946
Struck-
meyer
East Jeffer-
Con-
son St.
tract
Selling price
$12,500.00
$ 500.00
Cost
7,500.00
Additional cost
1,224.10 *
Depreciation
829.88 *
Selling expense
689.35 *
Profit
$ 3,916.43
$ 500.00
Taxable
$ 1,958.21
$ 500.00
1947
Prop-
Prop-
erty -
erty -
2526 N.
East Wash-
Third St.
ington St.
Selling price
$2,750.00
$8,500.00
Cost basis
2,000.00
5,179.13
Gain
$ 544.64
$3,396.31
Taxable
$ 544.64
$1,698.15
*64 In his 1957 income tax return petitioner reported receipt of house rentals in the amount of $11,471.30, offset by: Depreciation
$5,462.50
Repairs
1,520.11
Other expenses
2,354.95
$9,337.56 resulting in reported net rental profit of $2,133.74. In Schedule F of that return, he gave the following explanation of the claimed deduction of $5,462.50 for depreciation: Deprecl-
ation
Depreciation
Kind of
Prior
allowable
Property
Cost, etc.
Years
this year
Frame
$ 5,500.00
$1,100.00
$ 412.50
Cement
20,000.00
2,050.00
2,000.00
Cement
10,500.00
2,650.00
1,050.00
Cement
20,000.00
None
2,000.00 Petitioner, in a sworn question-and-answer statement made on January 27, 1959, admitted that the two $20,000 items in Schedule F referred to one rental property, with several units, on Henshaw Road, with actual cost of $17,374.10, plus $1,950 for furniture; or a total of $19,324.10 for the land, buildings, improvements and furnishings, and that "we could not possibly have had more than $22,000.00 in it." In that statement he stated that the first $20,000 on the 1947 return "was pulled out of the air"; that the second "$20,000 *65 is more or less based upon what the property would bring at resale"; and that he had been offered $55,000 for the property. On the preceding day, January 26, 1949, when questioned by Government representatives as to the second $20,000, he replied that when he was preparing his 1947 income tax return he added $10,000 to the cost of the Henshaw Road property and that when he discovered he was going to have to pay some tax he added another $10,000 to the cost of the property making a total of $40,000, and said: "If you ever repeat this I will just say that you are a demn, damn liar." On April 12, 1954, the United States District Court for the District of Arizona adjudged the petitioner guilty of wilfully and knowingly attempting to defeat and evade a large part of the income tax due and owing by him for the calendar year 1947, and entered a judgment sentencing petitioner to pay a fine of $1,000. Financial statements showing petitioner's assets, liabilities and net worth as of December 31, 1941, 1942, 1943, 1944, 1945 and 1947 were signed and sworn to by him. According to these statements his net worth at the end of each of these years was as follows: 1941
$16,416.16
1942
18,324.13
1943
33,491.37
1944
39,953.18
1945
42,338.69
1947
44,192.73
*66 Petitioner refused to sign a net worth statement for 1946 prepared by the Government representatives. When asked why he would not sign it, petitioner said: "Well, my net worth has increased too much." The living expenses of petitioner and his family were approximately $1,500 for 1942; $1,800 for 1943; $2,400 for 1944; and $2,400 to $3,000 for 1945, 1946 and 1947. In determining the deficiencies for each of the years 1942 through 1947, respondent allowed petitioner depreciation on the office furniture and equipment owned by him during those years; for the years 1942 through 1946 on a 1941 Buick automobile, determined to have been used 50 per cent for business and 50 per cent for pleasure; and for 1947 on a station wagon purchased in November of that year. Petitioner purchased the "Foster house" in Safford on April 6, 1942, and sold it on November 1, 1942. He sustained the following long-term capital loss on the sale of this property: Selling price
$1,300.00
Cost
1,495.03
Depreciation
85.67 *
Abstract fee
40.00 *
Loss
($149.36)
Petitioner did not report this loss in his 1942 return. Part of the rental *67 income of $457.42 from five rental properties which petitioner failed to report in his 1942 return was from the "Foster house" and the "Bunnion house". The rental income from the Foster house amounted to $110 for 1942. In computing the net rental income from this house, petitioner is entitled to deduct expenses of $200 and allowable depreciation of $85.67. The rental income from the Bunnion house amounted to $107.50 for 1942; expenses paid by petitioner on this house during that year amounted to $72.68; and allowable depreciation for that year was $40. The family residence of petitioner and his family on Fifth Avenue in Safford was purchased by petitioner on May 12, 1939, and was sold on October 31, 1944, for $4,452.53. This property was rented during the year of its sale. Allowable depreciation during the period the property was rented was $100. The total cost of the property, including improvements, was $7,675.89. There is no evidence that the sale price of the property was less than its basis for computing gain or loss, namely, its fair market value at the time it was converted from residential property to rental property. Petitioner is entitled to the following deductions for *68 expenses in addition to those allowed by the respondent in determining the deficiencies: Year
Amount
1942 $150
1943
380
1944
150
1945
75
1946
30
The returns of petitioner for the years 1942 through 1947 were false and fraudulent with intent to evade tax, and part of the deficiency for each of these years was due to fraud with intent to evade tax. Opinion RAUM, Judge: The record in this case is far from satisfactory. Much confusion is generated by the evidence, and our difficulties in dealing with the materials presented have been enhanced by petitioner's failure to file any brief. Nevertheless, we are fully convinced on this record that the returns for the years in question were false or fraudulent with intent to evade tax. Accordingly, the limitations issue must be decided against petitioner, and the additions for fraud (as revised to conform to our findings relating to the basic deficiency) must be approved. The income of petitioner was derived from the practice of law and from the rental and sale of real estate. In his returns for all of the taxable years, with the exception of 1943, he reported no income tax liability. The income tax liability *69 reported for 1943 was $9.68. In his returns he omitted items of income, such as legal fees, interest, rent, and gains from the sale of property, and in his return for 1947 he overstated the cost of a rental property and the allowable depreciation on that property when he discovered that without such overstatement he was going to have some income tax to pay. Petitioner testified that he did not report real estate profits and interest received because he had been advised and understood that as long as he was putting this income into like property, he did not have to include it in his income tax returns. He also testified that he kept this income separate and apart from income realized from the practice of law. He was subjected to a lengthy cross-examination to determine if he made, and how he made, this segregation. His testimony convinces us that at least for most of the period involved no attempt was made by him to segregate his real estate income from his other income, and that he kept no records from which he could determine how much of his income from real estate transactions was attributable to reinvestment of rents and other profits from such transactions and how much was attributable *70 to investment of other income, such as legal fees, in property purchased by him. We do not believe that his omission of real estate profits and interest from his returns was in fact founded upon any such alleged advice which he testified as having received. He was an attorney and he testified that during the taxable years he prepared hundreds of income tax returns for others. It is incredible to us that this petitioner ever thought that rents or other income from real estate were tax-free merely because he invested or intended to invest such income in other real estate. After a careful consideration of all of the evidence, our conclusion is that the returns of petitioner for the years 1942 through 1947 were false and fraudulent with intent to evade tax, and that a part of the deficiency for each year was due to fraud with intent to evade tax. We have made a finding to this effect. Although the burden of proving fraud was upon the Government, the burden of proof with respect to the basic deficiencies was upon petitioner. He testified as to certain deductions which he did not take in his returns for the taxable years. They included depreciation on his office equipment and automobiles, *71 automobile expenses, taxes and interest. In determining the deficiencies respondent allowed deductions for depreciation on office equipment and automobiles, and petitioner has not shown error in these allowances. Petitioner's testimony as to expenditures for automobile expenses, taxes and interest was not substantiated by any book entries or documentary evidence, and in many instances he was unable to give the amount of such expenditures. His testimony convinces us, however, that some expenditures for these items were made that were deductible. Applying the rule of (C.A. 2), we have made findings as to the amount of such expenditures in each of the taxable years. Petitioner is entitled to the deduction of these amounts. Petitioner testified that expenses on the Foster house for 1942 amounted to $478.45, and that the rental income of the house for that year amounted to $110. The expenses of $478.45 seem to us to be excessive. In the absence of any specific evidence showing that this amount was actually expended, we have made a finding, in accordance with the Cohan case, that petitioner is entitled to deduct, in computing the net *72 rental income from this house for 1942, expenses of $200. We have also found that petitioner is entitled to depreciation of $85.67 on the Foster house, and expenses of $72.68 and depreciation of $40 on the Bunnion house. These findings will have the effect of reducing the amount of unreported net rental income realized by petitioner in 1942 from the five rental properties owned by him in that year. Findings have also been made as to an unreported long-term capital loss sustained by petitioner on the sale of the Foster house in 1942, which will have the effect of reducing the amount of taxable gain realized by petitioner on the sale of other properties in that year. Decision will be entered under Rule 50. Footnotes
*. Adjustments conceded by the respondent.↩
*. Reflects adjustments conceded by respondent.↩
*. Reflects adjustments conceded by respondent.↩
*. Adjustment conceded by the respondent.↩